**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DARRYL MATTHEWS,

                Plaintiff,

      v.                                           9:16-CV-1198
                                                           (TJM/CFH)

JUSTIN THOMAS, Superintendent,
Marcy Correctional Facility,

                Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

Darryl Matthews
16-A-0623
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403
Plaintiff pro se

Hon. Eric T. Schneiderman                MARIA E. LISI-MURRAY, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff pro se Darryl Matthews ("plaintiff"), an inmate who was, at all relevant times,

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Superintendent ("Supt.") Justin Thomas – who, at all relevant times, was employed at Marcy Correctional Facility ("Marcy") – violated his constitutional rights under the Sixth and Fourteenth Amendments. Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Dkt. No. 12. Plaintiff did not respond. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II infra. Plaintiff alleges that on February 3, 2016, pursuant to a guilty plea to various criminal charges, a Suffolk County state court judge sentenced him to two years in prison, to be served as parole supervision,[2] upon the successful completion of the drug treatment program at the Willard Drug Treatment Facility ("Willard"), followed by two years of post-release supervision. Compl. ¶ 7; Dkt. No. 1-1 at 4. Plaintiff "was eventually transferred to the care and custody of [DOCCS], held at Marcy Correctional Facility." Compl. ¶ 8. At the commencement of this action, plaintiff was incarcerated at Marcy and had not

---

[2] "A sentence of parole supervision is an indeterminate sentence of imprisonment, or a determinate sentence of imprisonment . . . , which may be imposed upon an eligible defendant . . . . An individual who receives such a sentence shall be placed under the immediate supervision of the state division of parole and must comply with the conditions of parole, which shall include an initial placement in a drug treatment campus for a period of ninety days at which time the defendant shall be released therefrom." N.Y. CRIM. PRO. L. § 410.91(1).

2

been transferred to Willard. Id. ¶ 8-9. Plaintiff has not updated the Court as to whether he was ever transferred to Willard prior to his release from custody.    Plaintiff asked his Offender Rehabilitation Counselor when he would be transferred to Willard, but received no response. Id. ¶ 9. Plaintiff filed a grievance claiming that Marcy staff failed to transfer him to Willard in fulfillment of his plea agreement. Id. ¶ 10. The Inmate Grievance Resolution Committee ("IGRC")[3] denied the grievance. Id. ¶ 11. Plaintiff appealed his grievance to Supt. Thomas, who affirmed the decision of the IGRC. Id. Plaintiff's further appeal to the Central Office Review Committee ("CORC") was denied. Id.

## II. Legal Standard

### A. Motion to Dismiss

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (internal quotation marks omitted) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a

---

[3] The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

3

cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

4

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### III. Discussion[4]

In a December 22, 2016 Decision and Order ("D&O"), the Court interpreted plaintiff's complaint to allege violations of his First Amendment right of access to the courts and Fourteenth Amendment right to substantive due process. See Dkt. No. 8. at 4. Defendant moves to dismiss plaintiff's complaint, arguing that plaintiff has failed to state a claim under either legal theory. Dkt. No. 12 at 4.

### A. Fourteenth Amendment

Liberally read, plaintiff alleges that defendant's failure to obey a Suffolk County Court Order to transfer him to Willard in fulfillment of his plea agreement constitutes a violation of his due process rights. See Compl.[5] Defendant argues that plaintiff has failed to allege a claim under § 1983 because plaintiff has no constitutional right to placement at Willard. Dkt. No. 12

---

[4] All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

[5] Plaintiff requests injunctive relief – an immediate transfer to Willard. Compl. at 3. The DOCCS look up website provides that plaintiff was conditionally released to parole on April 3, 2017. See DOCCS LOOKUP, http://nysdoccslookup.doccs.ny.gov/ (last visited Nov. 6, 2017). It is unclear if plaintiff was transferred to Willard prior to his release. Further, plaintiff has not provided the Court with an updated address, as is required. N.D.N.Y. L.R. 10.1(c)(2).

5

at 3.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV § 1.  Due process "does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished without due process of the law."  Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).  "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

### 1. Protected Liberty Interest

First, the Court must establish whether defendant's failure to transfer plaintiff to Willard violated his due process rights.  As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property.  See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  Wilkinson, 545 U.S. at 221 (internal citations omitted). Affording plaintiff special solicitude, he appears to suggest that he retains a liberty interest in placement at Willard based on (1) his due process rights, and (2) a Suffolk County Court Order mandating placement at Willard.  See Toles v. Oklahoma Dep't of Corr., Case No. CIV-17-150-D, 2017 WL 1957286, at *7 (W.D. Okla. Mar. 28, 2017)

6

(assessing the plaintiff's complaint based on his constitutional due process rights as well as "what he contends had been 'Court-Ordered' in the Judgment and Sentence."); Compl. ¶¶ 1-11.

### a. Liberty Interest Inherent in the Due Process Clause

"The Due Process Clause does not protect against every change in the conditions of confinement having a substantial impact on inmates," particularly the changes that are "within the normal limits or range of custody which the conviction has authorized the State to impose." Sandin v. Conner, 515 U.S. 472, 478 (1995) (citation omitted). In this Circuit, it is well-settled that "an inmate has no constitutionally protected [liberty] interest in parole[,] . . . other conditional release from prison, prior to the expiration of a valid sentence[,] . . . discretionary good time release[,] . . . . or to participation in prison programs which might expedite release." McMillan v. Perez, No. 14-CV-3854 (KMK), 2016 WL 4926202, at *5 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks omitted) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979); Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir. 1997)).

Defendant cites three cases in support of his argument that plaintiff does not have a liberty interest in placement at Willard: Buitrago v. City of New York, Cofield v. Lempke, and Andujar v. Fischer. See Dkt. No. 12 at 3-5. In those cases, the plaintiffs were incarcerated at other facilities for specified periods of time before they were transferred to Willard. See Buitrago v. City of New York, No. 11 Civ. 8551(RJS)(DCF), 2012 WL 6621688, at *2

7

(S.D.N.Y. Dec. 19, 2012) (noting that the plaintiff was incarcerated for over 90 days pending his transfer to Willard); Cofield v. Lempke, No. 10-CV-0284 (MAT), 2011 WL 2881951, at *1 (W.D.N.Y. July 15, 2011) (noting that the plaintiff was incarcerated for 72 days pending his transfer to Willard); Andujar v. Fischer, No. 09-CV-489 (NAM/DRH), 2010 WL 786298, at *1 (N.D.N.Y. Mar. 2, 2010) (noting that the plaintiff was incarcerated for 25 days pending his transfer to Willard).

Here, plaintiff contends that defendant never transferred him to Willard, despite the Suffolk County Court Order. See Compl. ¶¶ 7-9. Although plaintiff's complaint focuses on defendant's apparent complete *failure* to transfer plaintiff to Willard rather than a *delay* in transfer, the rationale contained within the above-mentioned cases applies. These cases set forth the proposition that "the failure of prison authorities to timely transfer an inmate to a drug treatment program does not state a redressable constitutional claim." Cofield, 2011 WL 2881951, at *5; see Buitrago, 2012 WL 6621688, at *8; see also Andujar, 2010 WL 786298, at *4. Similar to Buitrago, Cofield, and Andujar, plaintiff pleaded guilty to various drug charges and was sentenced to two years in prison, to be served as parole supervision, followed by two years of post-release supervision. Compl. ¶ 7; Dkt. No. 1-1 at 4. As in Andujar, plaintiff's "release to parole supervision was contingent upon successful completion of his subsequent treatment" at Willard. Andujar, 2010 WL 786298, at *3; Dkt. No. 1-1 at 4. Although the Suffolk County Court judge provided plaintiff the opportunity to serve his sentence as parole supervision, that "does not mean . . . that [p]laintiff had a protectable constitutional interest in being transferred to Willard on a timely basis" as there is "no constitutional right to participate

8

in programs that might shorten [inmates'] sentence or otherwise expedite their release." Buitrago, 2012 WL 6621688, at *7, 8 (citing Moody v. Dagget, 429 U.S. 78, 88 n.9 (1976)).

The undersigned also finds helpful the Western District of Oklahoma's decision in Toles v. Oklahoma Department of Corrections. Toles, 2017 WL 1957286, at *7. In Toles, the plaintiff alleged that the defendants "impermissibly delayed and/or denied him entry into a drug treatment program" in violation of his due process rights. Id. at *6. Relying on Tenth Circuit precedent, the Western District of Oklahoma determined that "any liberty interest inherent in the Constitution could only arise once the inmate had been released" from the drug treatment program. Id. at *7. Because the plaintiff had been placed in the program and subsequently removed upon his transfer to a different facility, the Court concluded that "a constitutionally-protected liberty interest in completing the program arose upon [the plaintiff's] placement in the drug treatment program." Id.; cf. Boutwell v. Keating, 399 F.3d 1203 (10th Cir. 2005) (holding that because the plaintiff had not yet been released from confinement, he "failed to allege facts necessary to create an inherent constitutional liberty interest" in placement in the pre-parole conditional supervision program). Because of that actual placement in the drug treatment program, the plaintiff had alleged a valid constitutionally-protected liberty interest in the program. Id. at *8.

Unlike the plaintiff in Toles, plaintiff here alleges that he was never placed in Willard. See Compl. ¶ 8-9. Because it appears that plaintiff was never at Willard, a constitutionally-protected liberty interest in such placement, and in completion of the program, never arose. See Toles, 2017 WL 1957286, at *7-8; Compl. ¶ 10. Further, although plaintiff's Willard

9

placement was court ordered, there is no constitutional right to placement in a program which may expedite his release from prison. See McMillan, 2016 WL 4926202, at *5. Accordingly, plaintiff has failed to demonstrate that he has an inherent constitutionally-protected liberty interest in placement at Willard.

### b. Liberty Interest Created by State Law

Plaintiff argues that a protected liberty interest arises from the Suffolk County Court Order mandating his transfer to Willard. See Compl.[6] "A state may confer enforceable liberty interests on prisoners through its enactment of statutory or regulatory measures which place substantive limitations on prison officials' discretion." Klos v. Haskell, 48 F.3d 81, 86-87 (2d Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-73 (finding that a state statute created the plaintiff's liberty interest in avoiding administrative confinement); Greenholtz, 442 U.S. at 12 (finding that a state statute a liberty interest was created in early parole); Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974) (finding that a state statute created a liberty interest in the plaintiff's retention of good-time credits); Gittens v. LeFevre, 891 F.2d 38 (2d Cir.1989) (finding that a liberty interest was created in avoiding "keeplock" confinement)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified 'substantive predicates' which limit the discretion of state officials; and (2) it must have employed 'explicitly mandatory language,' requiring state officials to follow those substantive predicates." Klos, 48 F.3d at 87 (citing Kentucky Dep't of Corr. v.

---

[6] Defendant does not address this argument.

10

Thompson, 490 U.S. 454, 462-63 (1989)).

Pursuant to New York Criminal Procedure Law § 410.9(1), "if the court directs that the sentence be executed as a sentence of parole supervision, it shall remand the defendant for immediate delivery to a reception center operated by the state department of corrections and community supervision . . . for a period not to exceed ten days." N.Y. CRIM. PRO. L. § 410.91(1). A § 1983 action, however, does not arise automatically from a defendant's violation of state law. Doe v. Conn. Dep't of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990); see Watson v. City of N.Y., 92 F.3d 31, 37-38 (2d Cir. 1996) ("Ample precedent establishes that a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution."); Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."). "[D]espite the 'explicitly mandatory language' utilized in the state statute requiring [the plaintiff] to be transferred from a receiving facility to Willard within ten days[,] . . . the undersigned [must] determine what 'the true liberty interest at stake . . .' is and whether it was accorded proper protections." Andujar, 2010 WL 786298, at *2 (citing Watson, 92 F.3d at 37-38).

The Suffolk County Court Order instructed that plaintiff complete his sentence through parole supervision at Willard. Dkt. No. 1-1 at 4. Plaintiff's incarceration for an indeterminate period at Marcy did not alter the imposition of plaintiff's two-year prison sentence, nor did it "create[] a protected liberty interest in early release, notwithstanding the mandatory language of § 410.91." McMillian, 2016 WL 4926202, at *6. Undoubtedly, plaintiff has the right to be

11

free from unnecessary incarceration. Andujar, 2010 WL 786298, at *3. However, plaintiff's incarceration at Marcy was consistent with, and in furtherance of, a valid two-year prison sentence. See Compl. ¶ 7; Dkt. No. 1-1 at 3-5. Although the Suffolk County Order mandated transfer to Willard, plaintiff's incarceration at Marcy was still pursuant to his two-year sentence. See Dkt. No. 1-1 at 3-5; see McMillian, 2016 WL 4926202, at *6 (concluding that the 60-day period the plaintiff spent incarcerated did not amount to a constitutional violation prior to transfer to a drug treatment program); Andujar, 2010 WL 786298, at *3, 4 (finding that the defendants "were detaining [the plaintiff] pursuant to a valid sentencing order until he could be transferred to complete the conditional requirement standing between his incarceration and release."). Accordingly, plaintiff has failed to demonstrate a protected liberty interest created under the Suffolk County Court Order.

### 2. Substantive Due Process

In its December 22, 2016 D&O, the Court interpreted plaintiff's complaint as alleging that defendant violated his substantive due process rights based on defendant's refusal to obey the Suffolk County Court Order. Dkt. No. 8 at 6-8. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir.1994) (internal citations omitted). In this Circuit, "[a] prison official's knowing refusal to obey a state court order affecting a prisoner's rights would make that official liable for infringing upon the inmate's personal liberty protected by the

12

substantive due process clause of the Fourteenth Amendment." Johnson v. Coughlin, No. 90 Civ. 1731(SHS), 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997) (internal quotation marks and citation omitted). Such cases, however, "overwhelmingly involve [court] orders directing the prisoner's release from custody or release from a segregation unit." Hodge v. Perilli, No. 06 Civ. 2480(PAC)(MHD), 2010 WL 3932368, at *11 (S.D.N.Y. Sept. 30, 2010) (citing Cabassa v. Gummerson, No. 9:01-CV-1039, 2008 WL 4416411, at *16-17 (N.D.N.Y. Sept. 24, 2008) (involving release from special housing unit); Johnson, 1997 WL 431065, at *6 (same); Arce v. Miles, No. 85 Civ. 5810, 1991 WL 123952, at *9-10 (S.D.N.Y. June 28, 1991) (involving release from segregation unit); Huddleston v. Shirley, 787 F. Supp. 109, 110-11 (N.D. Miss.1992) (involving release from "jail during the day to go to work"); Talisker v. Moore, 738 F. Supp. 1005, 1013-14 (S.D. W.Va.1990) (release from custody)).

Insofar as plaintiff argues that defendant violated his substantive due process rights by failing to comply with the Suffolk County Court Order, the undersigned disagrees. Plaintiff does not allege that defendant's actions "were arbitrary, conscience-shocking or oppressive in the constitutional sense." Shuler v. Brown, No. 07-CV-0937, 2009 WL 790973, at *10 (N.D.N.Y. Mar. 23, 2009). The aforementioned case law centers on a defendant's refusal to obey a state court Order to release the plaintiff from segregated confinement, where prolonged isolation exposes an inmate to the possibility of physical and/or psychological harm, which, depending on the frequency and duration of confinement, may lead to lasting consequences unique to such confinement. See Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000).

13

Here, however, plaintiff alleges that the defendant refused to comply with the Suffolk County Court Order that he serve his sentence at a drug treatment program. See Compl. at 3. The undersigned finds that there is a distinct difference between a defendant's refusal to obey a court order by failing to release an inmate from segregated confinement or custody which has been ordered by a court and refusal to transfer a plaintiff to a drug treatment facility as ordered by a court while serving a valid prison sentence. "The former unequivocally infringes on a protected liberty interest — the right to be free from lawless incarceration — but the latter gives rise to no such concerns, given the absence of a liberty interest ab initio, as discussed above." Higgenbottom v. Racine County Sheriff Dept., No. 13-CV-1333-JPS, 2015 WL 5512952, at *7 (E.D. Wi. Sept. 17, 2015); see subsection III.A.1.b.-c. supra. As plaintiff was validly in custody, no substantial due process violation occurred by defendant's failure to transfer plaintiff to Willard.

Therefore, because plaintiff has failed to allege a protected liberty interest in placement at Willard either inherent in the Due Process Clause or created by the state, he has failed to demonstrate a violation of his substantive due process rights. Accordingly, it is recommended that the defendant's Motion to Dismiss on this ground be granted.

### B. Access to Courts

In its December 22, 2016 D&O, the Court also interpreted the complaint as alleging

14

a violation of plaintiff's First Amendment right of access to the courts. Dkt. No. 8 at 7-8.[7] In Johnson v. Coughlin, the Southern District of New York stated that:

> [a plaintiff's] right of access to the courts is also implicated by a state official's knowing refusal to obey a state court order affecting a prisoner's rights. Logic compels the conclusion that if a prisoner's initial access to a forum is allowed, but final access to the remedy decreed denied, the prisoner's broader right to petition the government for redress of grievances is vitiated.

Johnson, 1997 WL 431065, at *7 (internal quotation marks omitted) (quoting Arce, 1991 WL 123952, at *9); see Cabassa, 2008 WL 4416411, at *16 ("It is all but self-evident that a prison official's knowing refusal to obey a state court order directing an inmate's release from S.H.U. (following that inmate's filing a suit requesting that order) would make that official liable for infringing upon the inmate's right of 'access to the courts' under the First Amendment.").

Defendant argues that "[u]nlike Johnson (and similar cases), this case does not involve a situation in which a State official could plausibly be found to have knowingly refused a State court order affecting an inmate's rights." Dkt. No. 12 at 7. The undersigned agrees. First, plaintiff does not have a protected liberty interest in placement at Willard. See subsection III.A.2 supra. Second, in Johnson and Cabassa, the plaintiffs, who were confined in SHU, petitioned the state courts for their release and initiated § 1983 actions upon the defendants' failures to obey those orders, resulting in Court orders directing the plaintiffs release from SHU. See Cabassa, 2008 WL 4416411, at *16; Johnson, 1997 WL 431065, at *7. Here,

---

[7] "To state a claim for denial of access to the courts . . . , a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Wesolowski v. Washburn, 615 F. Supp. 2d 126, 129 (W.D.N.Y. 2009) (internal quotation marks and citation omitted).

15

there is no intervening state court order mandating plaintiff's release from confinement; rather, the state court order sentences plaintiff to two years in prison, and plaintiff's confinement at Marcy was pursuant to that sentence. See Compl. ¶ 7. Although the Order also directs placement at Willard, defendant's failure to transfer him does not amount to a knowing violation of his constitutional rights because keeping plaintiff at Marcy was still consistent with the Suffolk County Court Order. See subsection III.A.2 supra; Cabassa, 2008 WL 4416411, at *16. Therefore, because plaintiff's constitutional rights were not implicated by defendant's failure to transfer him to Willard, plaintiff has failed to demonstrate that defendant violated his First Amendment right of access to the courts. Accordingly, it is recommended that defendant's Motion to Dismiss on this ground be granted.[8]

Moreover, even, assuming *arguendo*, plaintiff had a protected liberty interest in placement in Willard, plaintiff requested only that the Court grant him injunctive relief "in the form of an order requiring Plaintiff be immediately transferred to the Willard Drug Treatment program." Compl. at 3. Plaintiff was released from prison on April 3, 2017 while his action was pending. See subsection III.A.n.5 supra. Because plaintiff's complaint requested only injunctive relief in the form of a transfer, when plaintiff was released from prison "he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered

---

[8] To the extent that plaintiff asserts a supervisory liability claim against Supt. Thomas, pursuant to his role as Superintendent of Marcy, such claim cannot succeed. Absent an underlying constitutional violation by a subordinate, there can be no supervisory liability. Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability."). The undersigned recommends that plaintiff's First and Fourteenth Amendment claims be dismissed, and, thereby, there exists no underlying constitutional violation for which defendant could be found liable.

16

moot." Khalil, 353 F. App'x at 621 (2d Cir. 2009) (internal quotation marks omitted) (quoting Muhammad v. City of N.Y., 126 F.3d 119, 123 (2d Cir. 1997)); see Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) ("Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."); Douglas v. Hollins, 160 F. App'x 55, 56 (2d Cir. 2005) (summary order) ("Because [the plaintiff] has been released from prison, his request for injunctive relief is moot."); Smith v. Fischer, 13-CV-6127-FPG, 2016 WL 3004670, at *2 (W.D.N.Y. May 23, 2016) ("It is settled in the Second Circuit that an inmate's release from prison moots his claims for declaratory and injunctive relief against the prison's officials."); Henrius v. County of Nassau, 13-CV-1192 (SJF)(SIL), 2016 WL 1171598, at *3 (E.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted) (concluding that because the plaintiff was released from prison, any injunctive relief "would afford no legally cognizable benefits to him since he was no longer imprisoned within the DOC [sic] system."). Therefore, even if plaintiff could establish a protected liberty interest in placement at Willard, his release from incarceration renders his complaint, which solely requests injunctive relief in the form of transfer to Willard, moot.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 12) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff Darryl Matthew's complaint (Dkt. No. 1) be

17

**DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[9]

**IT IS SO ORDERED**.

Dated: November 6, 2017
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).